[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit came to this court by writ, summons and complaint dated November 4, 1992, and returnable November 24, 1992, sounding in two counts. The first count claimed ownership of a certain 1989 Ford Tempo automobile and demanded its return by the defendants to the plaintiff. The second count claims the wrongful removal of certain personal property from premises known as 22 Avon Court, Middletown, by the defendants and conversion of said property by the defendants. The defendants appeared by counsel on November 25, 1992.
The defendants filed an answer to the complaint in the nature of a general denial of all allegations on February 16, 1993. On September 1, 1993, the defendants moved for leave to file an amended answer and counterclaim to which the plaintiff objected. The objection was sustained by Hurley, J. on September 30, 1993.
On September 13, 1993, the plaintiff filed a motion for summary judgment which the court, Austin, J., denied on October 12, 1993. A motion by plaintiff for an accounting filed November 8, 1993, was denied by the court, Hurley, J., on November 23, 1993. A dismissal of the complaint was entered on January 6, 1994, by the court, Hendel, J., but a motion to reopen the dismissal was granted on February 14, 1994. The matter came on for hearing by the court on September 27, 1994 CT Page 10620 and continued on September 28, 1994, to a conclusion.
The court makes the following findings of fact.
The plaintiff Steven Malcolm and the late Christine Malcolm were married June 27, 1987. The plaintiff Steven Malcolm was married to Christine Malcolm at the time of Christine Malcolm's untimely demise on September 2, 1992. There was a petition for dissolution of the marriage pending at the time of Christine Malcolm's death, but no decree dissolving the union had been entered by the court.
The defendants Olive Gunn and Leonard Gunn are the parents of the late Christine Malcolm. Christine Malcolm died intestate. Administration on her estate was granted on October 1, 1992. The probate court appointed Attorney W. Douglas Monahan as administrator even though the plaintiff had made application to be appointed as administrator.
The plaintiff and Christine Malcolm had been separated for many months prior to Christine's death, and the plaintiff had not provided her with anything except token support even though Christine was disabled as the result of a hip replacement operation.
Christine Malcolm was supported in the main by her parents' generosity and what little she could secure from the sale of some of her furnishings during the period of the separation which included February, 1992, until the date of her death.
At the time of her death, Christine Malcolm's name appeared on a Connecticut certificate of title issued by the Motor Vehicle Department concerning a 1989 Ford Tempo automobile. See Plaintiff's Exhibit 1. Ford Motor Credit was the listed lien holder on said certificate.
Title to the subject vehicle was taken in both names, the plaintiff and Christine Malcolm, in that at the time of purchase, the decedent Christine Malcolm was not employed. The certificate of title indicates that the applicant was female.
The retail installment contract reflects a price of $13,996, provision for 48 payments of $364.62 monthly, and reflects a trade in of a 1985 Chevy which vehicle was in CT Page 10621 Christine Malcolm's name alone at the time of the purchase of the 1989 Ford Tempo. See Plaintiff's Exhibit 2.
Although the plaintiff claims to have made the majority of the payments concerning the Ford vehicle he offered no proof thereof in the form of any cancelled checks or receipts.
During the period date of purchase, April 21, 1989, to date of Christine Malcolm's demise, plaintiff owned a vehicle in his own name, an Isuzu Trooper. As noted, Christine Malcolm passed away intestate, and there were no children issue of the marriage. Plaintiff and Christine Malcolm separated on February 13, 1992.
Plaintiff claimed at trial that he had a title to the 1989 Ford Tempo in his name alone but offered no documentary proof thereof.
Christine Malcolm had undergone numerous hip operations prior to the Ford Tempo purchase, and this vehicle was purchased because of the greater ease with which she could get in and out of the vehicle in contrast to the 1985 Chevrolet.
In 1989, plaintiff and Christine Malcolm purchased a home located at 22 Avon Court in Middletown. The purchase of the home was made possible by a loan from the defendant Olive Gunn to her daughter in the amount of $135,000.
In due course, a foreclosure action resulted in the plaintiff and Christine Malcolm losing the residence with a resulting deficiency judgment.
After the foreclosure, the plaintiff and Christine Malcolm moved into a residence owned by the defendants located on Tyler Avenue in Groton which they were allowed to occupy rent free.
The defendants are residents of Sarasota, Florida.
The plaintiff, as a result of his conduct, was requested to leave the Tyler Avenue, Groton, residence by Christine Malcolm on or about February 13, 1992. The plaintiff went to the Middletown residence in company with the witness, Adria Barnes, and removed a lengthy list of furnishings and CT Page 10622 personalty. See Defendant's Exhibit 12.
In an effort to financially sustain herself after February 13, 1992, Christine Malcolm sold off furnishings and contents of the Middletown residence to persons by the name of Alice and Jeffrey Coggins. This course, on her part, was necessitated due to the plaintiff's failure, refusal and neglect to provide her with any support until she expired due to an aneurism of the aorta.
After the death of Christine Malcolm, the plaintiff filed a petition in voluntary bankruptcy. See Defendant's Exhibit 1. In his petition, plaintiff asked and was discharged from the funeral bill, medical expenses, ambulance, etc., concerning the late Christine Malcolm. See Defendant's Exhibit 2. In Schedule B of plaintiff's bankruptcy petition, he lists household furnishings at $800, although at the time of trial he claimed furnishings, jewelry, etc. to the value of $25,000. The 1989 Ford Tempo is listed in Schedule B at $2,787 notwithstanding plaintiff's claim at trial of its value being $4,000.
Plaintiff's trustee in bankruptcy filed a notice of intention to abandon property based on plaintiff's petition. See Plaintiff Exhibit 15.
The majority of the payments on the 1989 Ford Tempo were made by Christine Malcolm or her parents, the defendants. The plaintiff's pension fund valued at $28,000 was unaffected by the bankruptcy petition. W. Douglas Monahan, Esq. was appointed administrator on the Estate of Christine Malcolm by Judge Palm on October 1, 1992.
An inventory on said estate was filed on November 15, 1993, which inventory included the 1989 Ford Tempo motor vehicle. See Defendant's Exhibit 5. The estate appears to be insolvent.
The 1989 Ford Tempo, with the consent and approval of the administrator, has been stored and safeguarded by the defendant Leonard W. Gunn without cost to the estate pending resolution of this suit and orders of the probate court. The vehicle is presently garaged on Blacksmith Drive in Ledyard.
The defendants have offered to turn over any remaining CT Page 10623 assets known to them (jewelry) on the further direction of the administrator and probate court.
In her lifetime, Christine Malcolm was employed as an insurance specialist.
Basically, the plaintiff's position is to the effect that because his name appeared on the motor vehicle certificate of title along with that of the late Christine Malcolm and mindful of the fact that the petition for dissolution had not been acted upon that he automatically became the owner of the vehicle upon her death.
In this respect, Section 14-16(b) of the Connecticut General Statutes and Section 14-174(d) are relevant.
Section 14-16(b) reads:
 If the owner of a registered motor vehicle dies, the registration for the vehicle shall, unless the vehicle is destroyed, continue in force as a valid registration until the end of the registration period unless: (1) Ownership of the vehicle is transferred by the deceased owner's executor, administrator, legatee or distributee prior to the end of the registration period, in which case the registration shall continue in force until the time of the transfer; or (2) ownership of the vehicle is transferred to the brother, sister, father, mother, child or spouse of the owner, in which case the registration shall, upon the payment of a fee of five dollars, continue in force until the end of the registration period or until the ownership is sooner transferred to a person other than such a relative. On and after July 1, 1986, the fee shall be ten dollars, on and after July 1, 1988, eleven dollars, and on and after July 1, 1992, twelve dollars. If at the end of the registration period the relative has not transferred ownership of the vehicle and the relative applies for registration of the CT Page 10624 vehicle, the registration shall not be subject to the provisions of subsection (a) of section 12-71b.
Section 14-174(d) reads:
 A certificate of title issued by the commissioner is prima facie evidence of the facts appearing on it. In any criminal proceeding, a certified copy of a certificate of title shall be prima facie evidence as to the ownership of a motor vehicle.
See Brockett v. Jensen, 154 Conn. 328 at page 337. "Such a registration is prima facie evidence, that is, it warrants although it does not compel a finding of ownership.Scalora v. Shaughnessy, 151 Conn. 252.
The administrator of Christine Malcolm's estate testified that after careful inquiry, he independently determined that the motor vehicle was hers and so inventoried it in her estate. The court is not aware of any appeal from probate as concerns the doings of the administrator. In count one of his complaint, the plaintiff claims that the defendants have converted the vehicle to their own use.
On the basis of the foregoing findings, this is clearly not the case. The vehicle is an asset of the estate and the defendants have assisted and cooperated with the fiduciary.
In the second count, the plaintiff claims conversion of certain unspecified personalty by the defendants. In that respect, the court has considered Section 45a-435 of the Connecticut General Statutes. That section reads as follows:
 Personal property that may be set out to spouse from insolvent estate. When the personal property of the deceased, exclusive of household goods exempt from execution, is not sufficient for the payment of his or her debts, the court of probate shall set out such household goods and may set out any other exempt property to the surviving spouse. CT Page 10625
The court has also considered the provisions of Section 45a-436 of the Connecticut General Statutes, which reads:
 Succession upon death of spouse. Statutory share. (a) On the death of a spouse, the surviving spouse may elect, as provided in subsection (c) of this section, to take a statutory share of the real and personal property passing under the will of the deceased spouse. The "statutory share" means a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate. The right to such third shall not be defeated by any disposition of the property by will to other parties.
 (b) If the deceased spouse has by will devised or bequeathed a portion of his or her property to his or her surviving spouse, such provision shall be taken to be in lieu of the statutory share unless the contrary is expressly stated in the will or clearly appears therein; but, in any such case, the surviving spouse may elect to take the statutory share in lieu of the provision of the will.
 (c) The surviving spouse, or the conservator or guardian of the estate of the surviving spouse, with the approval, after public notice and hearing, of the court of probate by which such conservator or guardian was appointed, shall, not later than one hundred fifty days from the date of the appointment of the first fiduciary, as defined in section 45a-353, file a notice, in writing, of his or her intention to take the statutory share with the court of probate before which the estate is in CT Page 10626 settlement, and is such notice is not so filed, the surviving spouse shall be barred of such statutory share.
 (d) If the court of probate has allowed a support allowance under section 45a-320 from the deceased spouse's estate for support of the surviving spouse and for the support of his or her family, the surviving spouse shall not take his or her statutory share until the expiration of the time for which the support allowance is made.
 (e) The statutory share shall be set out by the fiduciary charged with the administration of the estate or, in the discretion of the probate court on its own motion or an application by any interested person, by distributors appointed by the court of probate. The statutory share may consist of personal property or real property, or both, according to the judgment of the fiduciary or distributors.
 (f) The provisions of this section with regard to the statutory share of the surviving spouse in the property of the deceased spouse shall not apply to any case in which, by written contract made before or after marriage, either party has received from the other what was intended as a provision in lieu of the statutory share.
 (g) A surviving husband or wife shall not be entitled to a statutory share, as provided in subsection (a) of this section, or an intestate share, as provided in section 45a-437, in the property of the other if such surviving spouse, without sufficient cause, abandoned the other and continued such abandonment to the time of the other's death.
The testimony does not support the plaintiff's claims of conversion of personalty, presumably furnishings and CT Page 10627 appliances from the Avon Court residence in Middletown.
As earlier noted in the findings, the court determined that what remained of the contents of the Middletown residence were sold off by Christine Malcolm to keep body and soul together.
The defendants raise the issue of abandonment by the plaintiff of their daughter. While clearly Christine Malcolm was financially abandoned by the plaintiff, it would be a close question as to legal abandonment mindful of the pending dissolution action. The court feels, however, it need not address that issue.
Consideration was given to appeal from probate of Walter Williamson, 123 Conn. 425.
The plaintiff, as earlier noted, claimed at trial assets belonging to himself and his late wife of $25,000 plus. His actions in filing bankruptcy and the content of the schedules therein clearly show the lack of merit to any such claim. Plaintiff apparently never fully fairly and candidly apprised his trustee in bankruptcy of his claims. Plaintiff's conduct in endeavoring not to be responsible for even Christine Malcolm's last expenses is very telling.
It is ironic that the plaintiff makes his claims of conversion against the defendants who did so much for the plaintiff and Christine Malcolm in the past. The testimony does not support plaintiff's claims that the defendants intended to deprive him of any property or appropriate any property to themselves nor that the defendants have wrongfully taken, obtained or withheld any property from any owner or the plaintiff.
The probate court will in orderly process conduct the administration of this insolvent estate which is the proper forum for said activity. The administrator will continue in the performance of his duties in the probate court.
The 1989 Ford Tempo motor vehicle is an asset of the estate. The defendants have not converted anything to their use or benefit.
In this particular case, the court has weighed with CT Page 10628 extreme care the issue of credibility. Judgment may enter in favor of the defendants.
Austin, J.